**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| M.L., a minor student, by K.M.L., as Mother and Next Friend, and Each Individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Case No. 08-CV-2203 |
| | ) | |
| BOURBONNAIS SCHOOL DISTRICT 53, | ) ) | |
| Defendant. | ) ) | |

## OPINION

This case is before the court for ruling on the Motions for Summary Judgment (#37, #40) filed by Defendant Bourbonnais School District 53 (District) and Plaintiffs, M.L. and K.M.L. After careful consideration of all of the arguments and documents presented by the parties, this court rules as follows: (1) the District's Motion for Summary Judgment (#37) is GRANTED in part and DENIED in part; (2) Plaintiffs' Motion for Summary Judgment (#40) is GRANTED in part and DENIED in part; (3) the decision of the hearing officer is affirmed in all respects; and (4) Plaintiffs are entitled to attorney fees as prevailing parties in the total amount of $27,486.

## FACTS

M.L. was a student in the third grade during the 2007-2008 school year and attended a school in the District. M.L. is non-verbal, mentally impaired, and has been diagnosed with autism. M.L. receives special education services. During the 2007-2008 school year, M.L. was in a cross-categorical classroom, which consisted of six students, one special education teacher and three teaching assistants. M.L. resides with his mother, K.M.L., and his maternal grandmother. M.L.'s mother and father are both mentally impaired. Because of K.M.L.'s mental impairment, M.L.'s grandmother is responsible for his care and education, with some assistance from M.L.'s father and paternal grandparents. At the time of the hearing held in April 2008, M.L.'s grandmother worked

nights two or three times a week. M.L. had a history of leaving his grandmother's home during the early morning hours. Because of this problem, M.L.'s grandmother arranged for the installation of an electronic monitoring system and, in addition, M.L. began staying with his father and paternal grandparents on the nights his grandmother works. On those occasions, M.L.'s father drives M.L. to his bus stop or to school. M.L.'s father lives about 14 miles away from M.L.'s residence, outside the District's boundaries. Because of this, the District sent a letter to K.M.L. regarding M.L.'s residence in the District.

On July 23, 2007, Plaintiffs' attorney sent a due process hearing request to the District. The request stated that there were two disputes: (1) the District's determination that M.L. was not a resident; and (2) the District's denial of full special transportation to M.L. On July 24, 2007, the District's attorney sent a letter to Plaintiffs' attorney stating that, based upon a telephone conversation between the attorneys regarding M.L.'s residency status, M.L. was a resident of the District. Accordingly, the District promptly determined that M.L. was a resident of the District so that M.L.'s residency was not an issue at the due process hearing eventually held in April 2008. Regarding the transportation issue, Plaintiffs' attorney requested "full special transportation services, including door-to-door service and a bus aide." Plaintiffs' attorney also requested reimbursement for past transportation provided by family members. Plaintiffs' attorney also requested M.L.'s records. Plaintiffs' attorney subsequently complained that all records had not been provided, but the hearing officer assigned to the case, Carolyn Smaron, determined that the District had provided all the documents in its possession.

On August 23, 2007, Plaintiffs' attorney filed a Motion for Interim Educational Evaluation. This Motion was eventually withdrawn based upon the District's agreement to expedite M.L.'s three-year re-evaluation. On October 5, 2007, Plaintiffs' counsel filed a Motion for an Interim

Safety Order, requesting that the hearing officer order door-to-door transportation for M.L. prior to the hearing. The hearing officer denied this request on October 8, 2007. The expedited re-evaluation of M.L. was completed on October 29, 2007. A meeting regarding M.L.'s Individualized Education Program (IEP) was scheduled that day. Dr. Marrea Winnega, the District's outside autism consultant, was unable to attend the meeting. Plaintiffs' attorney objected, and the IEP meeting was rescheduled for December 14, 2007. At the December 14, 2007, meeting, each of the District's evaluators (the school psychologist, speech pathologist, occupational therapist, and social worker) provided oral and written reports of the evaluations, which included recommendations regarding M.L.'s educational program and related services. Dr. Winnega also provided a written and oral report and made recommendations regarding M.L.'s educational program. A written IEP was completed on that date.

On December 18, 2007, Plaintiffs' attorney filed an Amended Complaint for due process, reasserting the transportation claim and including claims that the evaluations of M.L. were insufficient, the IEPs were not reasonably calculated to provide educational benefit to M.L., and the parent was denied the opportunity to participate in the IEP process. On January 16, 2008, Plaintiffs' counsel filed a Renewed Motion for Interim Educational Evaluation. The hearing officer denied this request on the grounds that the sufficiency of the evaluation would be determined at the due process hearing. In February 2008, Plaintiffs' counsel requested an independent educational evaluation in a letter to the District's superintendent. The District denied this request in light of the hearing officer's prior order.

The due process hearing was held on April 8, 9, 10 and 16, 2008. The issues for ruling at the hearing were: (1) whether from July 23, 2005 to the present the District failed and refused to provide appropriate transportation for M.L.; (2) whether the District engaged in a pattern of

3

intimidation, threats and coercion with the result that K.M.L. was effectively denied the ability to participate in the development of IEPs dated March 24, 2006, May 10, 2006, and May 10, 2007; (3) whether the IEPs developed on those dates were inappropriate in that the school district did not appropriately discuss M.L.'s progress on his goals, did not set appropriate goals and benchmarks, did not set the appropriate amount of related service and in general created a program which was incomplete and inadequate; and (4) whether the District did not complete a full and complete evaluation of M.L. in the fall of 2007 and, as a consequence, the IEP developed on December 14, 2007, is inappropriate and inadequate, specifically in the areas of assistive technology and handwriting.

At the hearing, Plaintiffs' attorney and the District's attorney presented documents and testimony of witnesses in support of their positions. This court notes that Plaintiffs' attorney presented absolutely no evidence to support the claim of "a pattern of intimidation, threats and coercion." This court additionally notes that its careful review of the transcript of the hearing reveals that Plaintiffs' counsel, on many occasions, asked argumentative questions and questions which had little or no relevance to the issues before the hearing officer. This court concludes that the hearing officer showed enormous patience and gave Plaintiffs' counsel great latitude in presenting Plaintiffs' case. In short, the hearing officer's fairness to both sides during the hearing was exemplary.

After both sides presented closing statements on May 19, 2008, the record was closed. The hearing officer issued a 19-page Decision and Order on May 24, 2008. The hearing officer summarized the procedural history and the testimony presented at the hearing. The hearing officer then addressed the issues raised in order. The hearing officer first found that M.L. requires door-to-door transportation. The hearing officer directed the District to provide M.L. with door-to-door

transportation on the District's small bus and to assign an aide to accompany M.L. on the bus. The hearing officer stated:

> The parties are in agreement that the current bus stop cannot be seen from the student's residence on Bethany Lane. Both the grandmother and the school district concur - this essentially non-verbal mentally impaired autistic student cannot be relied upon to safely navigate a path to and from his residence to the currently designated bus stop on Latham Road. The school district asserts that it is not safe for a school bus to back up and asserts that none of its current collection of school buses can enter and leave the student's subdivision unless that school bus backs up. However, no one from the school district has attempted such a maneuver with its smaller school bus and the grandmother of the student asserts that buses similar in size to the smaller school bus (FedEX, UPS) routinely enter and exit the subdivision, turning around in the parking area in front of her residence. It appears clear to this hearing officer that the school district has focused on the safe maneuvering of its school buses rather than the safe transportation of this special education student. It is clear that the student's safety requires door-to-door transportation.

> There is ample evidence in the record that the student has run from his residence, presently wearing a wrist bracelet tied to a monitoring system within his home. Based on the foregoing, the

school district's autism expert, Dr. Marrea Winnega, testified that she would never leave this student unattended. The evidence supports a finding that the student requires an aide who will escort the student on and off the bus, escorting him to the front door of his residence.

The record reflects that the student's mother is unable to make the student available for pick up or drop off on a timely basis. It is clear that the student's family have developed an alternative wherein the student is properly supervised at all times in the home setting - when the grandmother is home, the student sleeps at home; when the grandmother is at work, the student sleeps at the home of his father. This arrangement meets the needs of the student and recognizes the teamwork involved for this student to arrive at school on-time on a consistent basis.

The record reflects that until the student's grandmother arranged for the new sleeping arrangements, the student's education was severely compromised by the inability of the student's mother to understand the importance of on-time consistent attendance at school. It is apparent that the student's progress or lack thereof was affected by the mother's lack of support for school attendance. Even if the student had had door-to-door transportation, it seems obvious that the student's mother would not have made the student available for transport. Any loss of educational benefit while the mother was "in charge" of getting the student up and ready for the bus in the morning

can be directly attributable to the student's mother. For that reason, it would be singularly inappropriate for this hearing officer to order the school district to reimburse the student's family for the costs associated with transporting the student prior to the current alternative arrangement established by the student's grandmother.

The hearing officer next found that there was "absolutely no evidence presented which would cause this hearing officer to conclude that the mother or any family member has been threatened, coerced or denied the right to participate in any IEP meetings."

The hearing officer also found that the IEPs prepared on March 24, 2006, May 10, 2006, and May 10, 2007, were appropriate. The hearing officer stated:

Other than statements by the student's grandmother that the student was capable of more, there was no evidence introduced which contradicted the testimony of the classroom teachers that the student made educational progress in 1st, 2nd and 3rd grade. There was no evidence introduced that the amount of related services was inadequate. The evidence and testimony support the conclusion that the goals for the 1st, 2nd, and 3rd grade were calculated to meet and did in fact meet the student's need at his present level of functioning. Even the grandmother conceded that the student had made really great progress in 1st and 2nd grade.

In addition, the hearing officer found the October 2007 evaluation and the current IEP prepared on December 14, 2007, to be appropriate. During her summary of the evidence presented, the hearing officer noted that Tamara Deschand, an occupational therapist, had testified that "a handwriting

evaluation is designed to test if a child knows how to form letters, if they had appropriate sizing of letters, spacing in between letters" and words. The hearing officer further noted that Deschand testified that "she did not complete a handwriting evaluation of the student because of the standardized nature of the assessment - the student is not able to copy letters from dictation at this point and would be unable to follow directions for the standardized evaluation" so that "no relevant data would be obtained." The hearing officer stated:

> The parent seems to be focused on the inability to definitively determine the student's IQ, the inability to definitively determine his academic status and the inability to definitively determine the student's status by the speech pathologist, occupational therapist and social worker. The parent seems particularly focused on a formal assistive technology assessment and handwriting analysis.

> The mother and grandmother, with legal counsel and his legal assistant, participated in the domain meeting on October 3, 2007. Each domain area was reviewed and all were found relevant. In fact, a 9th domain was added - autism. There was no insistence at that domain meeting that assistive technology or handwriting should be investigated. At the IEP meeting on December 14, 2007, no further evaluations were recommended - the participants clearly concluded that there was enough information upon which they could conclude that the student required services and thereafter develop goals and objectives for the student.

> The testimony of the school district's psychologist, speech

pathologist, occupational therapist, social worker and autism expert was quite persuasive - the foregoing individuals explained the results of their assessments, explained the necessity for utilizing non-standard administration of assessments, and explained that the student must be assessed based upon his current functioning level supported by data achieved in his classroom.

The testimony of the lone expert called by the parent - Dr. Zavodny - was singularly not helpful. She validated the testing completed by the psychologist (UNIT) and the testing completed by Dr. Winnega. She never observed the student, either at home or in the school setting, and had completed no evaluations of the student.

The parent asserts that the current IEP is deficient because it does not contain an explicit statement of teaching approach or methodology. In particular, they demand that the IEP developed on December 14, 2007 be amended to include a statement that the student be instructed with a "mix of structured teaching and ABA therapy." The parent introduced no authority for the proposition that specific teaching methodologies must be set forth in a student's IEP.

After the hearing officer's decision was sent to the parties, the District requested clarification. The District asserted that M.L. lives in a condominium development served by a private road and that access to that private road by any school district vehicle for the purposes of transporting M.L. has been denied by the condominium association. The condominium association had denied access for both the 72-passenger and 36-passenger school buses owned by the District.

The District also stated that it currently does not own a vehicle that could safely navigate the student's subdivision without backing up and thus "circumstances beyond its control make it impossible to comply with the Order as written."

The Order regarding transportation included in the hearing officer's Decision and Order stated provided for door to door transportation using the small bus owned by the District. The Order also provided:

> In the event that a small school bus cannot safely navigate the student's subdivision without backing up, the school district shall use any other vehicle now owned or hereafter acquired by the school district for the purpose of transporting students in general and this student in particular.

On June 2, 2008, the hearing officer entered a Clarification of Decision and Order. The hearing officer stated that she clarified the above language by adding the following:

> For purposes of compliance, the school district shall be required to either provide the door-to-door transportation as ordered or shall present documentation to the Illinois State Board of Education from the condominium association that the condominium association will deny access to any school district vehicle, whether now owned or hereafter acquired, for the purpose of providing door-to-door transportation to this student.

PROCEDURAL HISTORY

On September 2, 2008, Plaintiffs filed a Complaint (#1) in this court alleging violations of the Individuals with Disabilities Education Act as amended (IDEA), 20 U.S.C. § 1400 et seq.

Plaintiffs challenged the portion of the hearing officer's final order which found that the District's evaluation of M.L. was adequate and which found that the IEPs were appropriate. Plaintiffs also argued that they were not provided with adequate discovery and were improperly prohibited from presenting evidence at the hearing. In addition, Plaintiffs sought attorney fees from the District, arguing that they prevailed on a significant issue in this case, the door-to-door transportation issue.

On September 19, 2008, the District filed its Answer, Affirmative Defense and Counterclaim (#6). In its Counterclaim, the District claimed that the transportation portion of the hearing officer's decision and clarification should be revised because it conflicts with the least restrictive environment requirement and existing case law. In October 2008, the Illinois State Board of Education (ISBE) filed, under seal, the administrative record in this case (#10, #13).[1] The ISBE was subsequently terminated as a party to these proceedings.

On July 1, 2009, the District filed a Motion for Summary Judgment (#37), a Memorandum in Support (#38) and a Statement of Material Undisputed Facts (#39) with attached exhibits from the administrative record. The District argued that it is entitled to summary judgment in all respects because: (1) M.L.'s educational program provided him with a free appropriate public education (FAPE); (2) the District did not commit any procedural violations of the IDEA; (3) M.L.'s evaluations were appropriate to identify M.L.'s educational needs; (4) Plaintiffs are not "prevailing parties" who are entitled to attorneys' fees under the IDEA; and (5) the hearing officer's findings regarding transportation were clearly erroneous.

Also on July 1, 2009, Plaintiffs filed a Motion for Summary Judgment (#40), a Memorandum of Law in Support (#41) with the attached affidavit of Joseph Daniel Thomas regarding attorneys'

---

[1] Both sides subsequently requested leave to submit additional evidence to support their respective positions in this case. Leave was denied and both sides have been limited to the evidence contained in the administrative record.

fees, and a Statement of Undisputed Facts (#42), with attached exhibits.  Plaintiffs argued that they were entitled to summary judgment finding that they are prevailing parties as to the Order for door to door transportation, the concession of continuing residency, and the obtaining of a new Applied Behavior Analysis (ABA)/Discrete Trial Training (DTT) program for M.L.  Plaintiffs also asked this court to enter summary judgment finding that the evidence presented at the hearing requires reversal of the Decision and Order as to inappropriate IEPs for 18 to 24 months during M.L.'s 2nd and 3rd grade school years.

Both Motions for Summary Judgment are now fully briefed and ready for ruling.[2]

## ANALYSIS

## I. STANDARD

Although this case is before the court on Motions for Summary Judgment, the standard for reviewing a hearing officer's decision in an IDEA case differs from a typical summary judgment analysis.  See Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M., 356 F.3d 798, 802 (7th Cir. 2004; St. Joseph-Ogden Cmty. High Sch. Dist. No. 305 v. Janet W., 2008 WL 170693, at *8 (C.D. Ill. 2008); Schroll v. Bd. of Educ. Champaign Cmty. Unit Sch. Dist. #4, 2007 WL 2681207, at *3 (C.D. Ill. 2007).  A motion for summary judgment in an IDEA case "is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record."  St. Joseph-Ogden, 2008 WL 170693, at *8, quoting Heather S. v. State of Wis., 125 F.3d 1045, 1052 (7th Cir. 1997).  Despite being captioned a motion for summary judgment, the court bases its decision on a preponderance of the evidence.  Patricia P. v. Bd. of Educ. of Oak Park, 203 F.3d 462, 466 (7th Cir. 2000); see also Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross, 486 F.3d 267, 270 (7th Cir.

---

[2]  Pursuant to the court's Order (#57) entered on September 28, 2009, this court will not consider any supplemental evidence provided by M.L. in response to the District's Motion for Summary Judgment.

2007).  The IDEA provides that a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).[3]  The party challenging the outcome of the administrative hearing bears the burden of proof before this court.  Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist. #221, 375 F.3d 603, 611 (7th Cir. 2004); Patricia P., 203 F.3d at 466-67; Casey K. v. St. Anne Cmty. High Sch. Dist. No. 302, 2006 WL 2361881, at *8 (C.D. Ill. 2006).

The Seventh Circuit has instructed district courts to give due weight to the outcome of the administrative proceedings and not to substitute its "own notions of sound educational policy for those of the school authorities" whose decision it is reviewing.  Ross, 486 F.3d at 270, citing Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982); see also Patricia P., 203 F.3d at 466.  Due weight necessarily implies giving some deference to the decision of the hearing officer, particularly in light of the officer's special expertise in education law.  See St. Joseph-Ogden, 2008 WL 170693, at *8. Where no new evidence is taken, this court "owes considerable deference to the hearing officer, and may set aside the administrative order only if it is 'strongly convinced that the order is erroneous.'" Alex R., 375 F.3d at 612, quoting Sch. Dist. of Wis. Dells v. Z.S., 295 F.3d 671, 675 (7th Cir. 2002). "This standard emphasizes the limited role courts should play in deciding educational policy or making educational judgments."  Richard Paul E. v. Plainfield Cmty. Consol. Sch. Dist. 202, 2009 WL 995459, at *11 (N.D. Ill. 2009), citing Evanston Cmty. Sch. Dist., 356 F.3d at 802.  In reviewing the administrative decision, this court must focus on the evidence in the administrative

---

[3]  Despite the "shall hear additional evidence" language in the statute, courts have construed the statute to provide district court's with discretion to determine whether to hear such evidence.  See St. Joseph-Ogden, 2008 WL 170693, at *9.  As noted, this court determined that additional evidence was not necessary in this case and denied both sides leave to submit additional evidence.

record.  See Evanston Cmty. Sch. Dist., 356 F.3d at 802; Konkel v. Elmbrook Sch. Dist., 348 F. Supp. 2d 1018, 1022 (E.D. Wis. 2004).

## II.  RULING ON ADMINISTRATIVE REVIEW

### A.  PLAINTIFFS' CLAIMS

In their Complaint (#1), Plaintiffs challenged the portion of the hearing officer's Decision and Order which found that the District's evaluation of M.L. was adequate and which found that the IEPs were appropriate.  Plaintiffs also claimed that they were not provided with adequate discovery and were improperly prohibited from presenting evidence at the hearing, specifically the testimony of Dr. Elizabeth Zavodny and Gary Michaels.

"The IDEA (and predecessor statutes) created a federal grant program to assist state and local agencies in educating disabled children."  Evanston Cmty. Sch. Dist., 356 F.3d at 801-02.  "To receive funds, states must provide the children with the opportunity for a 'free appropriate public education,' or–because the situation calls out for another acronym–a FAPE."  Evanston Cmty. Sch. Dist., 356 F.3d at 802.  The United States Supreme Court has set out the method for determining whether a school district has provided a FAPE: "courts must ask whether the IEP is reasonably calculated to enable the child to receive an education benefit and whether the district complied with the proper procedures for drafting the IEP."  Evanston Cmty. Sch. Dist., 356 F.3d at 802, citing Rowley, 458 U.S. at 206-07.  Therefore, once the school district has met the Rowley requirements, it has done enough.  Evanston Cmty. Sch. Dist., 356 F.3d at 802.  "School districts are not required to do more than to provide a program reasonably calculated to be of educational benefit to the child; they are not required to educate the child to his or her highest potential."  Evanston Cmty. Sch. Dist., 356 F.3d at 802.

In this case, Plaintiffs have presented this court with a lengthy list of complaints about the

IEPs prepared by the District and the October 2007 evaluation performed by the District. This court has carefully reviewed the administrative record in this case, including the transcript of the April 2008 hearing. Following this careful review, this court concludes that the preponderance of the evidence supports the hearing officer's determination that the IEPs were appropriate and the evaluation was complete. The evidence shows that M.L. is receiving a high level of individual attention and made progress during the 1st, 2nd and 3rd grade. The testimony showed that M.L.'s curriculum consisted of visual, structured teaching that utilized tasks with a clear beginning and end that accommodated his learning style and helped him progress toward pre-academic skills such as reading. M.L. also received weekly speech therapy to work on his expressive language skills and was trained to communicate using the picture exchange system (PECS). This court therefore concludes that M.L.'s IEPs were reasonably calculated to provide educational benefits. See Richard Paul E., 2009 WL 995459, at *18. In addition, the record showed that M.L.'s evaluations were conducted by staff members who had significant experience in evaluating autistic students, including a speech pathologist, occupational therapist, psychologist, social worker, and autism consultant. This court concludes, consistent with the hearing officer's ruling, that the evaluations provided "enough information upon which they could conclude that the student required services and thereafter develop goals and objectives for the student."

This court also concludes that the record does not support Plaintiffs' complaints about the hearing: that they did not receive adequate discovery and were not allowed to fully present the testimony of Dr. Zavodny and Gary Michaels. At the hearing, the hearing officer determined that Dr. Zavodny was not qualified as an expert to review or critique the appropriateness of M.L.'s educational program, including his IEP goals, placement and related services. This was based upon Dr. Zavodny's testimony that, during her career as a clinical psychologist, she had attended a limited

number of IEP meetings, counseled a limited number of students with autism, and had not observed M.L. at home or at school. This court agrees with the District that the hearing officer's decision to limit the scope of Dr. Zavodny's testimony was neither arbitrary or capricious. This court agrees that the hearing officer could properly determine that Dr. Zavodny's experience with autistic patients and interaction with M.L. was limited, so that it was inappropriate for Dr. Zavodny to testify regarding M.L.'s IEPs and educational program. In addition, this court agrees with the District that Plaintiffs' claim that Michaels' testimony was limited is not supported by the record. This court also agrees with the District that the record supports the hearing officer's conclusion that Plaintiffs received all the discovery to which they were entitled.

For all of the reasons stated, this court concludes that the District is entitled to summary judgment on Plaintiffs' challenge to the hearing officer's Decision and Order.

### B. DISTRICT'S CHALLENGE OF TRANSPORTATION ORDERS

In its Counterclaim (#6), the District alleged that the "transportation portion of the [administrative] decision and clarification should be revised because it conflicts with the least restrictive environment requirement and existing case law under" the IDEA.

The FAPE required by the IDEA consists of special education and "related services" that meet the state's educational standards and conform to the child's IEP. See 20 U.S.C. § 1401(9). The IDEA states that the "term 'related services' means transportation, and such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26). The United States Supreme Court has stated that the text of the "related services" definition "broadly encompasses those supportive services" that may be necessary "to assist a child with a disability to benefit from special education." Cedar Rapids Cmty. Sch. Dist. v. Garret F., 526 U.S. 66, 73 (1999).

The District notes that the evidence at the hearing showed that M.L. had not had any problems on the school bus, at the bus stop or at school. The District argues that the IDEA does not mandate door-to-door transportation and that transportation provided as a related service must address the child's special needs, not the needs of the child's parents. This court agrees with those propositions. However, this court concludes that the hearing officer's ruling was related to the needs of M.L. and did not improperly concern only the problems of his family. The District has conceded that, in order to overturn the hearing officer's order, this court must be strongly convinced that the order is erroneous. See Z.S., 295 F.3d at 675; Richard Paul E., 2009 WL 995459, at *10. As noted previously, this standard emphasizes the limited role courts should play in deciding educational policy or making educational judgments. Richard Paul E., 2009 WL 995459, at *11, citing Evanston Cmty. Sch. Dist., 356 F.3d at 802. This court concludes that the hearing officer could properly conclude that, because of M.L.'s specific problems and history of running from his home, door-to-door transportation was necessary in this case. Therefore, this court cannot conclude that the hearing officer's order is erroneous.

For this reason, Plaintiffs are entitled to summary judgment on the District's Counterclaim.

### III. ATTORNEYS' FEES

In their Complaint (#1), Plaintiffs sought attorneys' fees under the IDEA. In their Motion for Summary Judgment (#40), Plaintiffs requested summary judgment on the issue of attorneys' fees. In support of their request for attorneys' fees, Plaintiffs attached the affidavit of their attorney, Joseph Daniel Thomas (#41-3). Plaintiffs' attorney stated that he attached his time sheets and the time sheets of Gary Michaels, who worked as a legal assistant in this case. Plaintiffs' attorney stated that his hourly rate for legal services was $220 in 2006 and 2007 and increased to $275 on January 1, 2008. Plaintiffs' attorney also stated that his hourly rate for travel was $110 in 2006 and 2007

and increased to $137.50 in 2008. Plaintiffs' attorney stated that his hourly rates were "reasonable and consistent with rates in the community for similar services by those of similar skills, experience and reputation." Plaintiffs' attorney further stated that Michaels' hourly rate was $125, which was reasonable considering rates in the community for similar services. Based upon the detailed time sheets for Plaintiffs' attorney and Michaels, Plaintiffs requested fees for their attorney in the amount of $50,083, reimbursable costs for their attorney in the amount of $774, fees for Michaels in the amount of $17,688, reimbursable costs for Michaels in the amount of $170, for a total request of $68,715. Plaintiffs also asked this court to grant Plaintiffs leave to submit a petition for their costs, including attorneys' fees, for the court proceedings in this case. Plaintiffs have also argued that the District is barred from arguing against Plaintiffs' costs, including attorneys' fees, because the District "unreasonably protracted the final resolution of the action or proceeding." This court finds absolutely no basis for this argument in the record before the court.[4]

The IDEA allows for discretionary grants of attorneys' fees under 20 U.S.C. § 1415(i)(3)(B), which provides, in pertinent part:

> In any action or proceeding brought under this section, the court, in
>
> its discretion, may award reasonable attorneys' fees as part of the
>
> costs . . . to a prevailing party who is the parent of a child with a
>
> disability.

20 U.S.C. § 1415(i)(3)(B)(i); see also John M. v. Bd. of Educ. of City of Chicago, 612 F. Supp. 2d 981, 990 (N.D. Ill. 2009). "Prevailing party" under the IDEA "has the same meaning as the phrase

---

[4] Plaintiffs seem to be arguing that the District should be blamed for the condominium association's resistance to bus travel on the private drive in front of M.L. home. This court finds no basis for blaming the District for the condominium association's actions. This court agrees with the district court in P.D. that this "court will not entangle itself in procedural conspiracy theories." See P.D. v. Mt. Vernon Cmty. Sch. Corp., 2008 WL 1701877, at *5 (S.D. Ind. 2008).

does in 42 U.S.C. § 1988." Evanston Cmty. Sch. Dist., 356 F.3d at 805, quoting Bd. of Educ. of Oak Park Dist. 200 v. Nathan R., 199 F.3d 377, 382 (7th Cir. 2000). "According to the Supreme Court, a prevailing party prevails under § 1988 if he obtains at least some relief on the merits of his claim such as an enforceable judgment, consent decree, or settlement." Evanston Cmty. Sch. Dist., 356 F.3d at 805, quoting Bd. of Educ. of Oak Park, 199 F.3d at 382. Plaintiffs may be considered a prevailing party if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." T.D. v. LaGrange Sch. Dist. No. 102, 349 F.3d 469, 479 (7th Cir. 2003), quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also P.D. v. Mt. Vernon Cmty. Sch. Corp., 2008 WL 1701877, at *3 (S.D. Ind. 2008). However, the Supreme Court's decision in Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001) is generally applicable to fee shifting provisions and is applicable to IDEA cases. See Bingham v. New Berlin Sch. Dist., 550 F.3d 601, 602-03 (7th Cir. 2008); John M., 612 F. Supp. 2d at 991. Therefore, a "court may award attorneys' fees only in those cases where the plaintiff has prevailed by securing a material alteration of the legal relationship between the parties, either, for example, by court ordered consent decree or an enforceable judgment." Bingham, 550 F.3d at 603, citing Buckhannon, 532 U.S. at 604; see also John M., 612 F. Supp. 2d at 991.

In this case, this court concludes that Plaintiffs prevailed on the issue of door-to-door transportation, which was awarded by the hearing officer following the due process hearing. See M.P. v. Noblesville Schs., 2004 WL 828242, at *13-14 (S.D. Ind. 2004) (plaintiffs were prevailing parties, in part, because of the hearing officer's finding in their favor on transportation issue). The District has argued that Plaintiffs cannot be considered the prevailing party on this issue because compliance with the hearing officer's decision on transportation is "impossible." This court does not agree. The hearing officer determined that door-to-door transportation is necessary for M.L.

and, in her clarification, gave the District options for complying with this order. This court therefore concludes that compliance is not "impossible."

The District has also argued that Plaintiffs cannot recover any attorneys' fees incurred after March 26, 2008. The IDEA prohibits the award of attorneys' fees for services performed after the receipt of a written settlement offer if: (1) the offer is made at any time more than 10 days before the administrative hearing begins; (2) the offer is not accepted within 10 days; and (3) the court finds the relief finally obtained by the parent is not more favorable than the offer of settlement. 20 U.S.C. § 1415(i)(3)(D). If these criteria are met, the IDEA limits fees to work performed before the written settlement offer was made. See John M., 612 F. Supp. 2d at 992, citing 20 U.S.C. § 1415(i)(3)(D).

The District argued that, on March 26, 2008, more than 10 days prior to the due process hearing, the District offered M.L. transportation on the small bus with an aide for M.L. to travel to and from school, with the aide providing M.L. with escort service to and from the bus. The District argued that this offer, in essence was "the same as door-to-door service" and was not more than Plaintiffs received following the hearing. The District noted that it also offered to pay for an independent evaluation up to $2500, increase speech and language services, provide compensatory education and provide parent training. The District argued that it essentially offered Plaintiffs more than they received at the hearing, so that Plaintiffs are not entitled to attorneys' fees in this matter generated after March 26, 2008.

The record shows that Plaintiffs have consistently requested door-to-door transportation for M.L, which the hearing officer awarded. The District's March 26, 2008, offer did not offer door-to-door transportation. Instead, the District offered an aide's assistance to and from the bus stop, a significant distance from M.L.'s door. This court therefore concludes that the settlement offer was not more favorable than the relief obtained from the hearing officer. See John M., 612 F. Supp. 2d

at 992; <u>Benito M. v. Bd. of Educ. of City of Chicago</u>, 544 F. Supp. 2d 713, 719-20 (N.D. Ill. 2008). Therefore, Plaintiffs are not limited to seeking fees generated prior to March 26, 2008.

Nonetheless, even though this court has concluded that Plaintiffs prevailed on the issue of door-to-door transportation and is not limited to seeking fees generated prior to March 26, 2008, "prevailing party status does not guarantee attorneys' fees, as a plaintiff's degree of success impacts the reasonableness of a fee award." <u>Evanston Cmty. Sch. Dist.</u>, 356 F.3d at 805, <u>citing</u> <u>Monticello Sch. Dist. No. 25 v. George L.</u>, 102 F.3d 895, 907 (7th Cir. 1996). A district court, therefore, should consider the amount of fees to be awarded (if fees are to be awarded at all) in light of the entire circumstances of the case. <u>See</u> <u>Evanston Cmty. Sch. Dist.</u>, 356 F.3d at 805. The amount of fees to be awarded is a separate inquiry that includes a primary consideration of the difference in degree of the relief requested and the relief granted. <u>John M.</u>, 612 F. Supp. 2d at 991. "In addition, the Court should consider the significance of the legal issues on which the plaintiff prevailed and the public purpose of the litigation." <u>John M.</u>, 612 F. Supp. 2d at 991. Courts may reduce a fee award where the parent obtained only limited or partial success. <u>John M.</u>, 612 F. Supp. 2d at 998, <u>citing</u> <u>Hensley</u>, 461 U.S. at 437-38; <u>see also</u> <u>Jay C. v. Bd. of Educ. of City of Chicago</u>, 2009 WL 3596175, at *4 (N.D. Ill. 2009); <u>Benito M.</u>, 544 F. Supp. 2d at 721; <u>M.P.</u>, 2004 WL 828242, at *17-18. This court agrees with Plaintiffs that the "most critical factor in determining the reasonableness of a fee award 'is the degree of success obtained' in relation to the other goals of the lawsuit." <u>Linda T. v. Rice Lake Area Sch. Dist.</u>, 417 F.3d 704, 707 (7th Cir. 2005) (citations omitted).

In this case, the hearing officer ruled in Plaintiffs' favor on one issue raised at the due process hearing, the issue of door-to-door transportation, but ruled in the District's favor on all other issues. In fact, Plaintiffs only achieved partial success on the issue of transportation, as the hearing officer refused their request for reimbursement of transportation expenses. As to the other three

issues presented at the hearing, the hearing officer determined that the IEPs were appropriate and resulted in educational progress, the evaluation of M.L. was adequate, and there was no basis to conclude that "the mother or any family member has been threatened, coerced or denied the right to participate in any IEP meetings." In fact, Plaintiffs presented no evidence at the hearing to support their allegation that anyone was denied the opportunity to participate in the IEP process. This court therefore concludes that Plaintiffs clearly only had partial success in this case.

This court notes that Plaintiffs have claimed to be "prevailing parties" as to the residency issue. This court agrees with the District that this claim fails for numerous reasons. First of all, as soon as the District had a telephone call with Plaintiffs' counsel and learned the circumstances of M.L.'s residency, the District promptly determined that M.L. was a resident of the District. Plaintiffs cannot receive attorneys' fees for the District's determination in their favor because it was not in the form of an enforceable judgment or court-ordered consent decree. Buckhannon, 532 U.S. at 604; Bingham, 550 F.3d at 602-03; John M., 612 F. Supp. 2d at 991; Koswenda v. Flossmoor Sch. Dist. No. 161, 227 F. Supp. 2d 979, 989 (N.D. Ill. 2002) ("to the extent that the benefits obtained by the Plaintiffs were not part of the IHO's Decision and Order, they are not considered by this Court for fee purposes"). This court also agrees with the District that the residency issue was never an issue during the due process proceedings and that it is an issue of state law which does not implicate the IDEA.

Plaintiffs have also claimed to be prevailing parties because the evidence showed that Dr. Winnega did not evaluate M.L or become involved in M.L.'s educational program, including recommending the use of ABA and DTT in M.L.'s educational program, until after Plaintiffs' due process hearing request was made. This court agrees that the record provides some support for this argument. However, this does not mean that Plaintiffs are prevailing parties as to these issues. See

P.D., 2008 WL 1701877, at *4-5 (fact that additional services resulted from hearing officer's suggestion following due process request did not demonstrate that the plaintiffs were prevailing parties where the hearing officer found that the IEP in place was appropriate). This court agrees with the district court in P.D. that Plaintiffs' prevailing party status depends entirely on whether they prevailed before the hearing officer in her Decision and Order. See P.D., 2008 WL 1701877, at *6; see also Koswenda, 227 F. Supp. 2d at 989.

In determining the amount of attorneys' fees to award in this case, this court first concludes that the hourly rates requested are reasonable. See Nicole M. v. Bd. of Educ. of City of Chicago, 2010 WL 186701, at *4, *6 (N.D. Ill. 2010); Jay C., 2009 WL 3596175, at *5 (N.D. Ill. 2009); see also Koswenda, 227 F. Supp. 2d at 995 ($200 hourly fee for Plaintiffs' counsel and $85 hourly fee for legal assistant were reasonable in 2002). This court further concludes, based upon a review of the time sheets provided to this court, that the time is adequately recorded and reasonable in light of the issues raised in this case. See Koswenda, 227 F. Supp. 2d at 995. The "lodestar" amount in this case, which is calculated by multiplying a reasonable hourly fee by the number of hours reasonably expended on the litigation, is $67,771, plus costs in the amount of $944, for a total of $68,715.

This court next concludes that Plaintiffs clearly achieved only partial success in this case on the very narrow issue of door-to-door transportation. Moreover, while this issue certainly has significance to Plaintiffs, this court concludes that the issue of door-to-door transportation for M.L. involved relatively unique factual circumstances so that the issue does not involve a significant legal issue and the public purpose of the litigation is not great. See, e.g., Koswenda, 227 F. Supp. 2d at 994-95. Accordingly, for all of the reasons stated, this court concludes that Plaintiffs request for $68,715 in attorneys' fees and costs is unreasonable and Plaintiffs are only entitled to a portion of

the attorneys' fees requested.  See M.P., 2004 WL 828242, at *16-17.

In Koswenda, a case involving Plaintiffs' attorney, the plaintiffs achieved only partial success and requested total attorneys' fees and costs, which included the services of two attorneys, a legal assistant and an educational consultant, in the amount of $101,319.20.  Koswenda, 227 F. Supp. 2d at 996. The district court noted that, in other cases, courts had granted a reasonable attorney fee reduced by 50% because of the plaintiffs' partial success.  Koswenda, 227 F. Supp. 2d at 997, citing Connolly v. Nat'l Sch. Bus Serv., Inc., 177 F.3d 593, 598 (7th Cir. 1999), Max M. v. Ill. St. Bd. of Educ., 684 F. Supp. 514, 531 (N.D. Ill. 1988); see also Jay C., 2009 WL 3596175, at *4-5 (plaintiffs' request for attorneys' fees and costs reduced by 50% to $33,318.04 because the plaintiffs prevailed on half of their claims).  The court in Koswenda stated:

> Here, a fifty percent reduction in the lodestar would not provide a reasonable fee.  Plaintiffs prevailed on none of the issues regarding a denial of FAPE and were granted relief on fewer than half of their claims.  Furthermore, in some instances the relief they were granted was substantially reduced from what was requested.  In light of the comparison of the case presented by Plaintiffs to the recovery received, the limited public purpose of the litigation, the minor importance of the legal issues on which the Plaintiffs prevailed, Plaintiffs are granted a total of $18,000.00 as their reasonable attorney's fee and costs.

Koswenda, 227 F. Supp. 2d at 997.

This court concludes that a reduction similar to the reduction in Koswenda is warranted in this case.  Here, Plaintiffs did not prevail in any of their challenges to the IEPs and evaluation and

did not succeed in obtaining reimbursement for transportation expenses. However, Plaintiffs did focus a significant amount of time and attention to the issue of door-to-door transportation and transportation is a "related service" encompassed by FAPE. This court therefore concludes that an award of 40% of the attorneys' fees and costs requested in this case is reasonable. This court further concludes that this amount is more than adequate based upon the limited success achieved in this case. Therefore, this court denies Plaintiffs' request for leave to submit a petition for costs, including attorneys' fees, for the proceedings in this court.

IT IS THEREFORE ORDERED THAT:

(1) The District's Motion for Summary Judgment (#37) is GRANTED in part and DENIED in part.

(2) Plaintiffs' Motion for Summary Judgment (#40) is GRANTED in part and DENIED in part.

(3) The decision of the hearing officer is affirmed in all respects.

(4) Plaintiffs are awarded attorney fees as prevailing parties in the total amount of $27,486. The clerk of the court shall enter judgment in favor of Plaintiffs and against the District in the amount of $27,486 for attorneys' fees and costs.

(5) This court concludes that the attorneys' fees awarded are adequate in this case, based upon the level of success achieved, so Plaintiffs' request for leave to submit a petition for costs, including attorneys' fees, for the proceedings in this court is denied.

(6) This case is terminated.

ENTERED this 15th day of March, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE